Vicki Rae SMITH, a Minor, by Raymond Smith, as Her Father and Next Friend, Plaintiff in Error,

v.

Ike CROTTS and Lester Dean Chronister, and G. E. Smith, Individually, and Smith Brothers, a Co-Partnership Composed of G. E. Smith, Robert Smith, W. A. Smith, Charles Ray Smith, and Inez Nations, Co-Partners Doing Business as Smith Brothers, Defendants in Error.

No. 38032.

Supreme Court of Oklahoma.

Dec. 23, 1958.

Rehearing Denied Feb. 24, 1959.

Application for Leave to File Second Petition for Rehearing Denied March 31, 1959.

Trower, Ferguson & Gaither, Tulsa, for plaintiff in error.

Luttrell & Luttrell, Norman, and Covington, Donovan & Gibbon, by A. M. Covington, Tulsa, for defendants in error.

WILLIAMS, Justice.

Upon the return of a jury verdict, a judgment was entered in the trial court in favor of plaintiff in error against the defendants Ike Crotts and Lester Dean Chronister, in the amount of $175,000. The named defendants in the trial below have not appealed that judgment. Nor has plaintiff in error presented a proposition of error as to her judgment against Chronister except to say. he confessed, in the trial court, her motion for new trial (which, however, was overruled by the trial court). She specifically abandons her appeal as to defendant Crotts.

Plaintiff in error, Vicki Rae Smith, has, however, appealed from the order and judgment sustaining the demurrer of the defendants Smith, individually and as Smith Brothers, a co-partnership, to plaintiff's evidence, and dismissing them from the case with their costs. (Parties have stipulated that W. A. Smith died during the pendency of the case in the trial court, but that such death did not operate as a dissolution of the partnership.)

We refer here to plaintiff in error as plaintiff and to the defendants in error as Smith Brothers. The non-appealing defendants below will be referred to as Crotts and Chronister.

The judgment against Crotts was primarily based upon allegations of negligence in furnishing his employee, Chronister, a dump truck used in hauling crushed rock, having faulty brakes and other mechanical defects, and operating the truck at an excessive rate of speed. The allegations of negligence as to Chronister were based upon the manner of operating

the truck at an excessive rate of speed, failure to give warning, operating a truck with defective brakes and overloading the truck with construction materials.

Plaintiff alleged that Crotts and Chronister were agents and servants of Smith Brothers and that Smith Brothers were negligent in that their loading shovel was used at the pit to load gravel on the truck operated by Chronister at the time of the accident. Smith Brothers specifically denied that their co-defendants Crotts or Chronister, were their servants or agents, and pleaded they were in fact independent contractors. They further denied that they had any control over the manner or method of loading the truck at the gravel pit or its operation thereafter.

Plaintiff contends the trial court erred in two respects in sustaining Smith Brothers' demurrer to plaintiff's evidence as follows:

First: Plaintiff urges that the trial court erred in sustaining the demurrer, as plaintiff produced evidence that the truck was overloaded by Smith Brothers and that the jury should have been allowed to pass on that fact and as to whether the over-loading, concurring with the negligence of the other defendants, was the proximate cause of the accident.

Second: Plaintiff says that the trial court erred in holding that Crotts and Chronister were independent contractors in so far as Smith Brothers were affected.

■ We start with the premise that where reasonable men may fairly differ as to whether the facts constitute negligence, the question is one for the jury. Carter v. Pinkerton, 194 Okl. 34, 146 P.2d 842. In Warden v. Richardson, 203 Okl. 474, 223 P.2d 338, 339, it is stated:

"The test applied to a demurrer to the evidence is that all of the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn therefrom, are admitted. The court cannot weigh conflicting evidence, but must treat as withdrawn the evidence which is most favorable to the demurrant."

Prior to the date of the accident and injury to plaintiff, Smith Brothers had entered into a written contract with the Oklahoma Turnpike Authority to construct a section of roadway on the northeast turnpike near Adair, in Mayes County, Oklahoma. Smith Brothers had located a gravel pit in that general vicinity and entered into contractual relations with Crotts, who owned and operated a fleet of dump trucks, to haul the gravel to Smith Brothers' part of the turnpike construction at a price per ton. Crotts furnished the trucks and drivers, including Chronister, to haul the gravel. When the loaded trucks reached the construction site they were weighed by Smith Brothers and the drivers were told where to dump the gravel. Crotts had exclusive authority over employment of drivers, their hours of work, route to be traveled and rate of pay, as well as the upkeep and repair of the trucks. Smith Brothers had no control or supervision of the work to be thus performed.

Smith Brothers had in their employ at the gravel pit a shovel operator, who filled the Crotts trucks with such amounts of gravel as directed by the drivers. The gravel load in the Chronister truck involved in the accident, was referred to as being an average load.

There is evidence which supports the jury's conclusion that the dump truck owned by Crotts and operated by Chronister had defective brakes and that it was being operated as it passed through the town of Adair at an excessive rate of speed, and was not under proper control under the conditions then prevailing. After the accident, the truck was impounded by a highway patrolman and the following day was weighed. The overall weight was found to be 23,280 pounds. Plaintiff stresses the point that as the overall weight of the truck was 23,280 pounds and the manufacturer's rated capacity was only 16,000 pounds gross vehicle weight capacity, that

the truck was over-loaded by 7,200 pounds. Further, that the rear axle capacity was 13,000 pounds and its actual weight 18,700, an alleged excess of 5,700 pounds above rated capacity. The weight of the rear axle was determined by moving the front wheels of the truck off of the weighing scales and the remaining weight presumably represents the weight upon the rear axle. Further evidence indicates that the truck in question had been licensed by the State of Oklahoma to carry an overall load up to 24,000 pounds.

Plaintiff, in her brief, states that the courts in numerous cases have held that over-loading is a basis of liability, citing Matsumato v. Arizona Sand & Rock Co., 80 Ariz. 232, 295 P.2d 850, 851, 56 A.L.R.2d 1385. In that case the Arizona Sand and Rock Co. had engaged the James A. Bond Trucking Co. to haul "river run gravel" from defendants' pit to the site of its road construction operations. "River run gravel" taken from the river bed was a conglomerate sand, gravel and boulder rock. After defendant loaded the trucking company dump trucks defendant's men had the duty of removing excess quantities, as otherwise the gravel and rocks would fall from the trucks along their route to the road construction site. Complaints were lodged by a deputy sheriff with the haulers of the fact of rock having fallen upon the roads. Quantities of conglomerate fell from the trucks on the street in front of plaintiff's place of business and also along the route. A passing truck caused a rock the size of a large orange to be thrown 40 feet and through the doorway of plaintiff's place of business and against plaintiff's leg causing her injuries. The Arizona court held that the defendant owed a duty to the public generally not to knowingly overload the trucks hauling its material so that rocks falling therefrom might create a dangerous condition upon the highway and that upon such proof the jury should have been permitted to pass on the question of negligence, and proximate cause.

Other cases relied upon by plaintiff are noted, as follows: Heavy Haulers, Inc., v. Jones, Okl., 304 P.2d 292 turned upon the sole question as to the excessiveness of the verdict returned. In Helmerich & Payne, Inc., v. Nunley, 176 Okl. 246, 54 P.2d 1088, 1092, one of the principal points involved was whether sec. 3698, O.S. 1931 applied equally to motor vehicles operated in private enterprise as it did to motor vehicles operated as a common carrier. However, the opinion discloses that the accident there involved resulted from loading a truck with material that extended so far outside that it struck a pedestrian walking on the side of the road, which "is nothing less than wanton carelessness and negligence." The Washington court in Porter v. Smart's Auto Freight Co., Inc., 174 Wash. 566, 25 P.2d 576, held:

> "Evidence showed that high piece of machinery weighing over 2,200 pounds, which could have been laid down inside trailer, was placed on tailgate and tied with light rope; that truck and trailer traveled between 35 and 40 miles per hour downhill and around a curve, causing machinery to fall to left side of highway, injuring plaintiffs and their automobile coming from opposite direction."

The Supreme Court of Errors of Connecticut in Zatkin v. Katz, 126 Conn. 445, 11 A.2d 843, stated the facts as follows: One Zatkin sued Katz and the Waterbury Wrecking Co. for damages to person and property. The wrecking company was engaged in demolishing a building. It sold the iron girders to Katz. The wrecking company assisted Katz in loading the girders in such a manner that they were placed on Katz' truck at a diagonal with the truck, extending in the rear 6 feet beyond the rear of the truck. While in operation the truck swerved, causing the girders to come in contact with a car going in an opposite direction. The joint liability of Katz and the wrecking company was based upon the violation of the

Connecticut Statute, Gen.St.Supp.1935, § 642c, and was negligence in and of itself. Moreover, the facts there disclose that in the manner of loading the beams, the wrecking company engaged and participated in the creation of an inherently dangerous instrumentality to be used upon the highway.

In Wells v. Lavitt, 115 Conn. 117, 160 A. 617, the action was brought for personal injuries resulting in death arising out of the operation of a truck by the defendant Radville, and his co-defendants Lavitt et al. The Lavitts, operating a farm, removed a bench in the center of their truck and 50 boys were so placed on the truck that many were compelled to stand along the side, thus affecting the center of gravity of the load, so that it swayed, hitting another car on the highway, causing the death of one boy. Again that decision is expressly based upon the inherently dangerous method of loading which was a substantial factor in causing the bus to overturn. In Luetkenhoelter v. Clements, La.App., 144 So. 262, the opinion discloses that liability of the trucking company was denied upon plaintiff's contributory negligence, therefore the cited statement that the accident occurred either by reason of over-loading or faulty brakes was without the issue.

Ryan-Richards, Inc., v. Whitesides, reported in 10 Cir., 96 F.2d 826, was an action for wrongful death occurring in Oklahoma. The question was whether Meacham, the driver of the truck, was the agent or servant of Ryan-Richards, or an independent contractor. Meacham was driving a truck which had an auxiliary gas tank extending six inches past the bed of the truck. Whiteside had parked his truck to the side of the road and was repairing the truck as Meacham passed so near that the auxiliary gas tank hit Whiteside, causing his immediate death. In disposing of the question of independent contractor, the opinion reflects that Ryan-Richards, in making a sworn written report of the accident to the State Highway Commission for whom it was constructing the road, stated that Meacham was their employee. Therefore, the sole question of negligence and proximate cause was for the jury.

A careful reading of the foregoing cases discloses factual situations so dissimilar to the case before us that they cannot be relied upon as controlling authorities. Those cases either turn upon violations of statutes with reference to the operation of trucks, or upon evidence supporting the relation of principal and agent or master and servant, or upon the creation or participating in the creation of an inherently dangerous instrumentality to be used upon the highway, conditions which are not presented in the case at hand.

■ We are of the view and so hold that the evidence submitted by the plaintiff does not show that Smith Brothers were negligent as charged or that the charged negligence constituted the proximate cause of the accident involved.

The remaining question presented is whether there was evidence that Chronister was an agent of his co-defendant, Smith Brothers. We have heretofore set out the facts with reference to the employment of Chronister by Crotts and the terms of the employment.

■ Plaintiff contends that when he submitted proof that Chronister was working for Smith Brothers he made a prima facie case of agency, warranting the submission of the question of agency to the jury; that the burden then was shifted to Smith Brothers to establish that the relation of independent contractor existed and upon their failure to meet that burden of proof plaintiff was entitled to an instructed verdict against Smith Brothers. In the alternative it is argued that if Smith Brothers adduced evidence to rebut the presumption of agency, then the offered proof of standard specifications for the construction of the Oklahoma Turnpike were admissible to rebut that proof. Plaintiff calls our attention to Ellis & Lewis v. Trimble, 177 Okl. 5, 57 P.2d 244, to support the foregoing premise. That case

supports plaintiff's contention that where proof was submitted showing that Phillips was engaged in hauling for Ellis & Lewis, a presumption of agency arose, therefore the demurrer was properly overruled. See also Oklahoma City Const. Co. v. Peppard, 43 Okl. 121, 140 P. 1084. After defendant's demurrer in Ellis & Lewis v. Trimble was overruled, it produced evidence tending to establish that the defendants were independent contractors. Defendant then asked for an instructed verdict which was denied. Upon appeal we reversed, holding that Phillips' testimony refuted plaintiff's contention of agency, which testimony stood undenied.

From a factual standpoint it is not difficult to differentiate that case from the case under consideration here. Moreover, in the case before us, plaintiff did more than show that Chronister did some work for Smith Brothers, thus raising the presumption of agency, but produced evidence of the terms and conditions of said employment as to Crotts' ownership of the trucks, Crotts' employment of Chronister, and the method and manner of doing the work which testimony established the relationship of Crotts and Chronister as independent contractors.

■ Giving the plaintiff's construction of the evidence its most favorable light, it does not sustain plaintiff's assertion that the relationship of master and servant or principal and agent existed between Smith Brothers, Crotts and Chronister. Neither do we think that plaintiff's offer of proof, the introduction of the standard specifications for the construction of the Oklahoma Turnpikes, serves her. That volume containing over 500 pages of specifications, and among others, provides:

"The Authority will not recognize any sub-contractor on the work. The Contractor at all times when work is in progress be represented at the site of the work either in person or by a qualified superintendent, who shall be in direct charge of all operations on the contract, whether performed directly by the Contractor or through a sub-contractor.

"The Contractor shall not sub-contract more than seventy (70) per cent of the work; and at least thirty (30) per cent of the work must be performed by personnel in the direct employ of the Contractor with equipment owned or rented by the Contractor.

"The Authority reserves the right to disapprove any sub-contractor proposed to be used by the Contractor, or to order the Contractor to remove from the work any sub-contractor whose work or the progress thereof is unsatisfactory to the Consulting Engineer. In no event shall the Contractor do any work through a sub-contractor who is not identified in his proposal without first notifying the Consulting Engineer, in writing, of his intention to do so."

Plaintiff's contention is that the general specifications were promulgated and made a part of the contract for the purpose of making the general contractor responsible to the public, generally.

We do not find support in the specifications or other testimony for that conclusion. As we construe "107.01" that provision, by its very purpose, was for the protection and benefit of the Turnpike Authority, and was not made for any other purpose. The authority sought only to hold its contractors to the strict performance of all essentials of their contracts and it was not concerned whether the contractor here delivered the conglomerate by rail, by truck or otherwise; that service could be performed either by their direct employees or by an independent contractor. Plaintiff argues that Smith Brothers could not sub-let any portion of the contract with the Turnpike Authority and therefore there could be no relationship of independent contractor here. The specifications provide otherwise. The second paragraph of "107.01" provides that the contractor shall not sub-let contract more than 70% of the work, and the last para-

graph provides he may assign the entire contract with the Authority's approval.

We find no error in the court's refusal to permit the introduction of the proffered proof of the specifications referred to.

The judgment of the trial court is affirmed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.